*Dickinson v. York*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of October, two thousand twenty.

PRESENT:  DEBRA ANN LIVINGSTON,
                     *Chief Judge*.
                RICHARD J. SULLIVAN,
                WILLIAM J. NARDINI,
                     *Circuit Judges*.
------------------------------------------------------------------
SHANNON C. DICKINSON,

     *Plaintiff-Appellant*,

     v.                           No. 18-2781

NATHAN H. YORK, WARREN COUNTY SHERIFF, WAYNE FARMER, SERGEANT; WARREN COUNTY CORRECTIONAL FACILITY, OFFICER MASON, OFFICER GREEN, OFFICER REYNOLDS, OFFICER SMITH, OFFICER POND, OFFICER HARPP, OFFICER

TROTTIER, FKA OFFICER TROTIER, OFFICER SLATER, OFFICER CURTIS, OFFICER WITTENBURG, FKA OFFICER WITTENBURG, OFFICER LEMELIN, FKA OFFICER LEMLON, OFFICER SORENSEN, FKA OFFICER SORENSON, OFFICER MATTISON, OFFICER ALLISON, OFFICER HILL, OFFICER VANDENBURG, OFFICER ELDRIDGE, OFFICER HOERTER, SGT. KEAYS, LT. CLIFFORD, LT. MADAY, WARREN COUNTY

  *Defendants-Appellees,*

TOURGE, GRIEVANCE COORDINATOR, WARREN COUNTY C.F.,

  *Defendants.*

-----------------------------------------------------------------

| | |
|---|---|
| FOR APPELLANT: | OMAR ALI KHAN (Kelsey D. Russell, Steven W. Shuldman, *on the brief*), Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY. |
| FOR DEFENDANTS-APPELLEES: | LORAINE CLARE JELINEK (Gregg Tyler Johnson, *on the brief*), Johnson & Laws, LLC, Clifton Park, NY. |
| FOR *AMICUS CURIAE* THE LEGAL AID SOCIETY: | Robert M. Quackenbush, The Legal Aid Society, New York, NY. |
| FOR *AMICUS CURIAE* PRISONERS' LEGAL | |

SERVICES OF NEW YORK:        James M. Bogin, Prisoners' Legal Services of New York, Albany, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **REVERSED** and **REMANDED** for further proceedings.

Plaintiff-Appellant Shannon Dickinson appeals from a decision of the United States District Court for the Northern District of New York (Kahn, *J.*) granting summary judgment in favor of Defendants-Appellees on Dickinson's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*; the New York State Constitution; and 42 U.S.C. § 1983 to redress violations of his rights under the Eighth and Fourteenth Amendments.  Dickinson, a paraplegic who has been confined to a wheelchair since 1991, filed suit alleging that Defendants denied him (1) appropriate wheelchair-accessible transportation and (2) an accommodation to the standard-issue uniform, which was unsafe to use in a wheelchair.  On appeal, Dickinson argues that the district court erred in granting summary judgment on his claims for failure to exhaust administrative remedies.  We agree.

3

## I. Standard of Review

We review the district court's grant of summary judgment *de novo*. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 121–22 (2d Cir. 2016). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In granting summary judgment, the court is "required to view the evidence in the light most favorable to the party opposing summary judgment [and] to draw all reasonable inferences in favor of that party." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).

## II. Applicable Law

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all "available" administrative remedies prior to bringing an action in federal court. 42 U.S.C. § 1997e(a). An administrative procedure is "unavailable" when (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the scheme is "so opaque that it becomes, practically speaking, incapable of use," meaning that "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it;" or (3) "when prison administrators thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

At the time of the events relevant to this appeal, Dickinson was a pretrial detainee housed in Warren County Correctional Facility ("WCCF"). Title 9, Subtitle AA, Chapter I of the New York Codes, Rules and Regulations ("NYCRR") outlines the "Minimum Standards and Regulations for Management of County Jails and Penitentiaries," including those that apply to a formal inmate grievance procedure. *See* NYCRR tit. 9 § 7032.1–.12. Under those regulations, "the chief administrative officer of each local correctional facility shall establish, implement and maintain a formal inmate grievance program," *id.* § 7032.1, which "shall include," among other things, "a detailed description of grievance program operations including steps, timeliness, investigative processes and available internal and external appeal procedures," *id.* § 7032.3(b).

Title 9 of the NYCRR further provides that, under any facility program, an inmate must "file a grievance within five days of the date of the act or occurrence giving rise to the grievance." *Id.* § 7032.4(d). Within five business days of receipt,

5

the "grievance coordinator shall issue a written determination."  *Id.* § 7032.4(i). The inmate has two business days after receipt of the grievance coordinator's determination to appeal to the chief administrative officer, *id.* § 7032.4(j), after which the chief administrative officer has five business days to issue a determination, *id.* § 7032.4(k).  For "any grievance denied by the facility administrator," the inmate has three business days to indicate to the grievance coordinator that he seeks to appeal to the State Commission of Correction, and the grievance coordinator then has three business days to submit the appeal to the Commission's Citizens' Policy and Complaint Review Council ("CPCRC").  *Id.* § 7032.5.  Subject to certain exceptions not relevant to this appeal, the CPCRC "shall issue a written determination to the appeal within 45 business days of receipt."  *Id.* § 7032.5(d)(1).[1]

---

[1] In a supplemental letter to the Court submitted after oral argument, Defendants argue – for the first time and without explanation – that Dickinson failed to exhaust administrative remedies under Title 7 of the NYCRR.  But Title 7 "constitutes the rules and regulations" for "*State* Department of Correctional Services," NYCRR tit. 7 §§ 1.0(a), 1.5(a) (emphasis added), not local facilities.  The administrative bodies involved and the timelines for review differ between Title 7 and Title 9, *compare id.* § 701.5 *with* NYCRR tit. 9 § 7032, thus suggesting that the two cannot both apply to a given case.  To the extent Defendants now argue that Title 7 applies, they have waived that argument.  *See McCarthy v. S.E.C.*, 406 F.3d 179, 186 (2d Cir. 2005) ("We think it reasonable to hold appellate counsel to a standard that obliges a lawyer to include his most cogent arguments in his opening brief, upon pain of otherwise finding them waived.").

## III.  Discussion

A. <u>Dickinson Exhausted His Grievance Regarding His Entitlement to Wheelchair-Accessible Transportation</u>

Dickinson filed a grievance on November 12, 2015, contending that WCCF violated the ADA by taking him to court appearances and off-site medical visits in a regular patrol car rather than a wheelchair-accessible van.  The grievance coordinator denied Dickinson's grievance on November 16.  Dickinson appealed, and on November 17, the chief administrative officer agreed with the grievance coordinator's decision to deny the grievance.  Dickinson appealed to the CPCRC on November 18.  Dickinson filed suit on February 10, 2016 – 55 business days after he appealed to the CPCRC.[2]  At the time, his appeal before the CPCRC was still pending.  The CPCRC denied his appeal on June 9, 2016.

In *United States v. Hayes*, No. 19-650, filed simultaneously with this summary order, we held that an inmate exhausts administrative remedies under the New York State Department of Corrections and Community Supervision Inmate Grievance Procedure where he follows each step of the process but the

---

[2] It is not clear from the record when the CPCRC *received* the appeal, which starts the 45-day deadline under the regulations.  The magistrate judge assumed that the CPCRC received Dickinson's appeal on November 23, the last of the three business days to submit the appeal. Defendants do not contest this conclusion on appeal.  Therefore, assuming this to be true, the CPCRC's response was significantly after the 45-day deadline to respond.

administrative body fails to respond to his final appeal within the time allocated under the regulations. Just as with the state administrative scheme at issue in *Hayes*, Title 9 requires that the CPCRC respond to an appeal within a limited time period. *See* NYCCR tit. 9 § 7032.5(d)(1) ("[T]he [CPCRC] shall issue a written determination to the appeal within 45 business days of receipt."). Because the CPCRC failed to do so here, and because the regulations do not provide any other avenue for relief, we find that Dickinson has exhausted his administrative remedies.[3]

## B. Dickinson Exhausted Administrative Remedies with Respect to His Wheelchair-Safe Clothing Grievance

On September 17, 2015, Dickinson submitted a grievance claiming that the standard one-piece jumpsuit uniform was inadequate, since he could not wear it properly and the loose-hanging material would catch on his chair. Sergeant Spring promptly accepted his grievance, and informed Dickinson that the Correction

---

[3] While Title 9 provides only the "Minimum Standards and Regulations" that a county facility must implement in adopting a formal grievance program, Defendants have failed to submit any evidence of the actual grievance program that WCCF has implemented. *See* NYCRR tit. 9 § 7032.3; *see also Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 62 (2d Cir. 2015) ("The burden . . . is on the defendant to establish at the outset that an administrative remedy was 'available' in the sense that a grievance policy or procedure existed and covered the dispute at hand."). The parties nonetheless appear to have conceded that the minimum standards in Title 9 apply. Therefore, for the purposes of this appeal, we assume that the grievance program in place at WCCF incorporates the procedures outlined in Title 9. And while it is possible that WCCF may have *additional* procedural mechanisms relevant to this appeal, we conclude that Defendants have forfeited any such argument. *See Hemphill v. New York*, 380 F.3d 680, 686, 688–89 (2d Cir. 2004) (non-exhaustion is an affirmative defense that can be forfeited), *overruled on other grounds by Ross*, 136 S. Ct. 1850.

Administration was in the process of ordering him a two-piece uniform. Approximately one month later, having still not received his new uniform, Dickinson filed another grievance to inquire about its status. After Sergeant Spring told Dickinson that WCCF had ordered the uniform and that it would arrive soon, Dickinson voluntarily voided his second grievance. As an interim measure, Dickinson was given a two-piece uniform from a neighboring facility. Ultimately, Dickinson waited for his own new uniform for four months, two of which were after WCCF accepted his grievance.

"[W]here prison regulations fail to provide a remedy for implementation failures, prisoners who receive a favorable outcome to their initial grievance that remains unimplemented have fully exhausted their available remedies." *Ruggiero v. City of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (citing *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004)). Because the regulations here do not provide a remedy for an inmate to appeal an implementation failure, we conclude that Dickinson exhausted his administrative remedies. *See* NYCRR tit. 9 § 7032.5(a) (stating only that an inmate "may appeal any grievance *denied* by the facility administrator, in whole or in part, to the [CPCRC]" (emphasis added)); *see also Ruggiero*, 467 F.3d at 176.

## CONCLUSION

Accordingly, for the reasons stated above, we **REVERSE** the grant of summary judgment in favor of Defendants-Appellees on Dickinson's claims, and **REMAND** to the district court for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk